THE MAYOR, ALDERMEN AND COMMONALITY OF THE CITY OF NEW YORK *v.* A. L. HYATT and JOHN DOE.

The act of 1853, article 4, § 5 (session laws of 1853, p. 446), and the act therein referred to—see articles 20 and 21 of act of 1833—session laws of 1833, p. 13), by which the violation of the ordinances of the corporation of the city of New York is declared a misdemeanor and made punishable by fine or imprisonment, etc., do not operate as a repeal of the penalty given by those ordinances, nor take away the right of the corporation to prosecute a civil action and recover such penalty to their own use.

The right to pass by-laws, affix penalties, and sue for and recover them to their own use, is given to the corporation of the city of New York by their charter, and it is not to be deemed taken away by implication, unless the state law is irreconcilably inconsistent with the right thus given.

If the state law and the whole ordinance can stand together, the former does not repeal the latter.

Where the defendant does not appear on the trial in the court below, the appellate court will not be astute to discover defects in the plaintiff's evidence, especially when it is not claimed that injustice has been done, nor that the appellant has any defence on the merits.

THIS action was brought by the corporation of the city of New York, to recover of the defendants, as partners, penalties

for alleged violations of section 26 of the second title of an ordinance, passed May 9, 1839, entitled, "Of streets and roads," forbidding, among other things, the display of goods at a greater distance than twelve inches in front of a building. Judgment by default was rendered by the Fifth District Court, and the defendants appealed to this court. The further facts and the grounds of appeal, appear in the arguments of counsel and in the opinion.

*Henry C. Banks* and *Louis N. Glover,* for the defendants, argued as follows :

The justice had no jurisdiction of the cause of action, for the reason that the ordinance under which the action was brought was repealed (at least so far as the remedy and the manner of its collection were concerned) by an act of the legislature, passed April 13, 1853, entitled, "An act in relation to the police department in the city and county of New York." (Laws of New York, 1853, p. 440, chap. 228 ; see §§ 5 and 7, article 4, on p. 446.)

Section 5 of article 4 of this act provides : "Sections 20 and 21 of an act entitled, ' An act relative to the powers of the common council of the city of New York, and the police and criminal courts of said city,' passed January 23d, 1833, shall apply to all penal ordinances passed by the common council of said city."

Section 7 of the same article and the same act provides : "All ordinances, parts of ordinances, resolutions, and acts now in force, and inconsistent with this act, shall be, and the same are hereby repealed."

The sections of the act of 1833 which are thus made to apply to all penal ordinances of the common council, provide, section 20 : "That it shall be lawful for the mayor, aldermen, and commonality, to pass such ordinances as they may deem necessary for the regulating and licensing of the keepers of ordinaries," etc.

And section 21 provides : "All persons offending against

such ordinances shall be deemed guilty of misdemeanor, and be punished, on conviction before any of the magistrates described in the second section of this act, by a fine not exceeding ten dollars, or in default of such fine, by imprisonment, provided such imprisonment does not exceed ten days."

The magistrates here referred to, and described in the second section of the act, are the mayor, recorder, and police justices. (See laws of the state of New York relative to the city of New York, pp. 602, 607–8, §§ 2, 20 and 21.)

This statute imposes a new penalty, and therefore repeals even without any express repealing clause, the ordinance under which this action is brought, at least so far as the remedy is concerned, and thus deprives the civil justices of all jurisdiction; because where a statute imposes a new penalty for an offence, it repeals, by implication, so much of the former statute as establishes a different penalty, and whether the second penalty be smaller or larger, the party cannot sue on the one or the other at his option. (See Smith's Commentaries on Statutory and Constitutional Construction, p. 896, § 776, and cases there cited.)

The ordinance under which the action was brought was not set forth in the complaint, but only read, and it does not appear that it was proven or certified.

The defendants are sued jointly, and there is no evidence or allegation of any joint indebtedness, or that they were co-partners. One may have occupied one half of the store, and the other the other half, in which case they would not be jointly liable. No joint indebtedness is shown.

There is no evidence that the ordinance was violated on the days alleged in the complaint. The plaintiffs complain for " the 26th day of November, and divers other days," and the witness testifies that on or about that day goods were hung out. The allegation in the complaint is, therefore, not proven, and the recovery in this action could not be pleaded in bar in another action for the recovery of the penalty for that very day.

There was but one offence proven under any circumstances, and the plaintiffs were therefore entitled to recover only one

penalty of $5. The witness testifies that the defendants hung things more than twelve inches from the wall, and that they have done so for months, but it does not appear that there was more than one offence, or that the things were hung out more than once.

The judgment of the justice should, for these reasons, be reversed with costs.

*John B. Haskin*, for the plaintiffs, argued as follows:

I. The first ground of appeal, to wit: That the remedy by civil action for violation of the corporation ordinances is repealed, and that the justices' courts and all other courts except the police justices' are deprived of jurisdiction, is not well taken.

The position taken is that the remedy by civil action is "inconsistent with" the criminal remedy provided by the 21st section of the act of 1833 (Laws relating to the city, p. 607–8), and extended to all the penal ordinances by the act of 1853, (Sess. Laws of 1853, p. 446,) and that the former is, therefore, by force of the 7th section of the latter act (p. 446) repealed.

1. This is a most extraordinary claim, and if it were tenable, would show that all our courts had been acting continually without jurisdiction in entertaining actions upon the corporation ordinances ever since 1833. For this criminal remedy was applied by the act of 1833 itself to the ordinances which the common council was thereby (Laws relating to the city, § 20, p. 607) authorized to pass, relating to "licensing and regulating ordinaries or victualling-houses, or where fruit, oysters, clams, liquors, or meats shall be sold, and for the more effectual suppression of vice and immorality, and the preserving of peace and good order in said city, and for the licensing and otherwise regulating the use and employment of dirt carts, and to prevent or regulate the firing of any fire-arms, or the firing or setting off any squibs, gunpowder, rockets, or fireworks, in said city." And the ordinances passed under this act, relating to those subjects, must have been unwarranted and void from

the time of their passage, so far as they imposed any penalty or remedy for violation, other than the criminal remedy prescribed by section 21 of that act, if the appellants' argument is good for anything. And according to the same argument, the penalties imposed by the corporation ordinances, concerning "carts and cartmen, cabs and cabmen, hackney coaches and hackney coachmen, stages and accommodation coaches or omnibuses and their drivers, and public porters and hand-cartmen," have been likewise repealed ever since the act of 1846 (Sess. Laws of 1846, p. 408, § 10), which extended the criminal remedy to all ordinances relating to those subjects. So, also, it must be contended by the appellants, that the penalties imposed by the ordinances concerning "dealers in second-hand articles and keepers of junk-shops," have been repealed by the application of the criminal remedy to them by the act of July 9, 1851. (Sess. Laws of 1851, p. 807). And finally, that all penalties imposed by the corporation ordinances were repealed on the 13th of April, 1853, by the act of that date, since which time no civil court has had jurisdiction of any action for their violation.

2. The remedy by civil action is in no respect or degree "inconsistent with" or repugnant to the criminal remedy, but is compatible and consistent with it. There is no difficulty whatever in upholding and enforcing both. Instances are numerous where the statutes themselves prescribe both civil and criminal remedies for violations of the same law. Libel, false imprisonment, assault and battery, conspiracy, and such offences may be prosecuted both civilly and criminally. The Revised Statutes (2 R. S. 4th ed. p. 80, § 49) declare the racing of animals for a bet or wager a misdemeanor, to be punished, upon conviction, by a fine not exceeding $500, or imprisonment not exceeding one year; and in the same article, and the next succeeding section but one (§ 51), enacts, also, that the owner or rider so offending shall forfeit $25, to be sued for and recovered by the overseers of the poor. Gaming is also prohibited by the Revised Statutes (2 R. S. 4th ed. p. 73, § 12), and any person who shall at one sitting win any sum or value, shall

forfeit five times the value of the money or property so won, to be recovered by the overseers of the poor. In addition to that, he is liable to indictment, and, upon conviction, to be fined or imprisoned, by virtue of a subsequent act passed in 1851 (Laws of 1851, p. 943), which, so far from being held to repeal the former remedy, is incorporated along with it, by the revisers, in the fourth edition of the statutes. Civil and criminal remedies are also presented for violations of the laws relating to "lotteries," and "excise regulations," and many other offences, and have nowhere been held inconsistent with each other. On the contrary, they have been held perfectly recognizable and consistent. The Supreme Court held, in the case of *The People* v. *Stevens*, 13 Wend. 341, that a recovery of a penalty by the overseers of the poor, for selling liquor without license, was no bar to a subsequent indictment for the same offence.

In the same court it was held, in the case of *Blatchley* v. *Moser et al.* 15 Wend. 215, that an indictment for a violation of the same statute was no bar to an action by the overseers for the penalty; thus holding that both remedies not only were consistent with each other, but might be pursued for the same violation. The authority relied upon by the appellants' counsel has been wholly misapprehended by him. It is true that where a specific penalty or punishment is prescribed to be imposed for any offence, if a subsequent statute enlarges, diminishes or changes that punishment, or substitutes another punishment to be imposed upon a conviction under it, the former penalty or punishment must be regarded as inconsistent with, and repugnant to the latter, and by implication repealed; and this is all that can be deduced from Smith's Commentaries. This is a very different thing from creating a distinct mode of proceeding and remedy as in this case. The reason of the rule laid down in Smith is, that it must have been the intention of the legislature to repeal the former penalty; and the intention of the legislature is the sole object to be discovered and determined in construing and interpreting statutes. (Smith's Commentaries, p. 628, § 480; and p. 879, § 757.) And it is against the policy of the law to favor repeals of statutes by impli-

cation. (Same, p. 879, § 758.) Some decisions in Massachusetts have also been heretofore relied upon in support of the appellants' position, which, however, wholly fail to sustain it.

The statute of that state, and the decisions upon it, are referred to and commented on by the court in the case in 15 Wend. p. 216. It appears that both remedies could not be pursued under the Massachusetts statute against selling liquor without license, because of the peculiar phraseology of that statute, though it was not even held in that state that the remedies were inconsistent, but only that a party violating the law could not be presented in both forms of proceeding for the same offence. As to the intention of the legislature, there is nothing whatever in the act of 1853 which exhibits any intention to repeal the civil remedy in this obscure and inferential manner, involving such a total revolution in the administration of the municipal government of this city.

3. Another anomaly presented by this objection may not be unworthy of notice here. The "penal" ordinances of the city for violation of which the act of 1853 authorizes criminal prosecution, are "penal" only because they impose penalties. (2 Bouvier's Law Dic. tit. "Penal Statutes.") Whereas, if the penalties are repealed and blotted out, they are no longer "penal ordinances," but at the most are prohibitory merely, and remain a mass of municipal inhibitory and mandatory regulations and enactments, despoiled and disarmed of their most efficacious means of enforcement. Even those which subject parties, by way of penalty, to the expenses of correcting their violations (as those relating to nuisances and the public health), could no longer be enforced in a way to indemnify the city.

II. The second point taken by the appellants' counsel is not well taken, to wit, that the ordinance is not set forth in the complaint.

1. A written complaint is not necessary in a justice's court, and the ordinance was read at the time of joining issue, and made a part of the complaint.

2. Besides, it is sufficiently set forth by its title, and section, and the date of its passage. (Code, § 64, sub. 5.)

3. This objection, even if it were valid, was not taken in time. It is too late to object to the indefiniteness of a pleading after judgment; the remedy is by demurrer. (Code, § 64, subd. 6.)

III. The ordinance was read in evidence, without objection, and it is too late to object any want of or defect in the proof of it.

IV. There was abundant evidence to sustain the judgment as against the 3d, 4th, and 5th objections taken in the notice of appeal.

V. As to the 6th objection taken in the notice of appeal, the evidence showed daily and continuous violations of the ordinance; the complaint sufficiently alleged them; and any number of violations and causes of action of the same character might have been joined in one action. (*Deyo* v. *Rood*, etc. 3 Hill, 527.)

VI. The judgment should be affirmed, with costs.

*Mr. Banks* and *Mr. Glover*, for the defendants, in reply.

The question stated by counsel for the respondents herein as to whether the civil courts had any jurisdiction in actions to recover penalties for the violation of corporation ordinances before the act of 1853, is entirely immaterial. The only question to be determined is whether the police act of 1853 does not repeal the ordinance (or change the remedy) under which this suit was brought? Whether it does not prescribe a new penalty—for it seems to be admitted by the argument of the counsel for the respondents, that if a new penalty is prescribed by the act of the legislature, the ordinance is repealed.

The cases of libel, false imprisonment, assault and battery, etc. referred to by counsel for the respondents are not parallel cases; in those the defendant is punished for his offence against the laws, and the party aggrieved has his action for his injury; and the cases cited only decide that a statute may give both a civil and criminal remedy.

It is not sufficient for the return of the justice to state that the ordinance was read in evidence.

And it is not now too late to take the objection—for although the defendants failed to appear, the plaintiffs were bound to prove their case.

It is as though an action had been brought against the maker and endorser of a promissory note, and the return of the justice showed that the certificate of the notary (which under certain circumstances is evidence) had been read in evidence.

A corporation ordinance cannot be read in evidence unless it is proved.

As to the objection that but one offence was proven, the case cited by respondents only decides that several penalties may be claimed in the same action; but in this case there was no evidence of more than one offence or violation, and therefore only one penalty of $5 could be recovered.

By the Court. WOODRUFF, J.—The corporation in virtue of its charter has express authority to make and establish ordinances of the description mentioned in the argument submitted to us on this appeal, and to impose penalties for their violation, and to levy or sue for and recover the same to their own use. This is a very important franchise, and if it be conceded that (as it appertains to the municipal power given for the purpose of government merely), it is competent for the legislature to interfere so as to impair the right of the corporation to affix and collect such penalties for their own use, they are not to be deemed to have done so by implication unless their statute is irreconcilably inconsistent with this right. This is no such case. The punishment of the misdemeanor and the civil remedy given to the city may stand together. The case is not so strong as where the same legislative body gives an action to the overseers of the poor to recover a forfeiture and by another act punishes the offender by imprisonment, and yet such acts stand together.

Here the corporation, in virtue of its charter, imposes a penalty for the breach of its authority and ordinance, and

collects the debt which such violation creates in its favor. The state punishes the offender for the public wrong. In my opinion the statute in question in no wise conflicts with or impairs the right of the corporation in this respect. The other grounds of reversal relate to the proceedings on the trial, in respect to which it must suffice to say—

First. The proofs required of a plaintiff when the defendant does not appear, must undoubtedly be legal evidence, and must be *primâ facie* sufficient to establish the cause of action; but they need not necessarily appear by the return to be such that no possible objection could have been taken to their admissibility if the defendant had been present objecting. Thus we would not reverse, because the plaintiff addressed leading questions to a witness, or because he gave evidence of the contents of a paper in the defendant's possession without preliminary proof of notice to produce it. The return states that the plaintiff read the ordinance sued upon, in evidence. It is true the return does not say from what book or paper it was read, but the ordinance itself was competent evidence, *i. e.* it was in its nature competent and essential to the recovery. It is proper for us to presume that it was properly authenticated. At all events, if the defendant wished to reverse on this ground, he should have obtained a further return by which it would appear from what book or paper the ordinance was read to the court. And this is the more proper since by the act of 1832 (Sess. Laws, p. 251), the corporation ordinances may be read in evidence from the volume of ordinances published by authority of the common council. We must, I think, presume that they were read from that volume until the defendants show that they were improperly read.

The proof was positive that the defendants hung out shirts etc. in front of the store, and that they carry on business there. In the absence of further explanation, this was evidence of a joint act and *primâ facie* sufficient to made them jointly liable.

The day laid in the complaint, if it was at all material to prove it as laid, was sufficiently identified by the witness to be *primâ facie* in support of the complaint. He does not, it is

true, swear positively to the day, but says, on or about that day.    I do not, however, regard the day as material.

Finally, it is urged that but one offence was proved.    The witness says, they hung shirts, etc., across the side-walk, on or about the 26th November, and " that they have done so for months."    The language of the witness is to be taken in the sense in which such language is ordinarily used, and in which it is usually understood, and when applied to the exposure of goods for sale in front of a store, no ordinary mind would hesitate to say that the witness meant that they had done so daily or at least, during the business days for months.

In determining whether a plaintiff has proved his case when the defendant does not appear, we cannot be hypercritical, and a defendant who neglects his case below has no right to call upon us on appeal to be astute to find grounds for reversal, especially when he does not excuse his default nor show that any injustice has been done, nor seek a new trial on that ground.

The judgment must be affirmed.

Judgment affirmed.